2ns336
45  333

## DE ENDE vs. MOORE.

The purchaser of property, at a sale ordered by the court of probates, acquires it free from incumbrances.

APPEAL from the court of the eighth district.

PORTER, J. delivered the opinion of the court. The petitioner in this case obtained a mortgage from one Joseph Aydelott, now deceased, on certain lots in the town of Madisonville, in order to secure the payment of two promissory notes of $1500 each; and seeks by this action to enforce that mortgage on the property affected by it, which is now in the hands of the defendant.

The defendant sets up title to the premises in virtue of a conveyance from Joseph H.

Hawkins, now also deceased, who purchased them at a public sale, duly and legally made by order of the court of probates, of the estate of Aydelott, the mortgagor; and he avers that the property has come into his hands, discharged from the liens, with which it was affected previous to that sale.

The evidence introduced on the trial, supports the allegations of the parties, and we have therefore presented for decision, a question of vast importance; not only as affecting rights to property, which has heretofore been acquired, under sales made by order of the probate courts throughout the state, but also as recognizing a rule which in future will have a frequent and important application, in the settlement of deceased persons estates.

We pronounced an opinion a few days since in the case of *Lafon's executors* vs. *Phillips & al., ante* 225, in which we laid down a doctrine, that if confirmed in the instance before us, would be fatal to the pretensions of the plaintiff. We have deemed it however, proper to examine the subject as if presented for the first time: for the very circumstance of our having expressed the opinion just alluded to, has enabled us to derive

an advantage from the discussion of this cause, which we could not well have obtained on the first argument. The counsel whose duty it was to impugn that opinion, having the grounds before him on which the court decided, instead of wasting his attention on minor questions, has been able to direct the whole of it, to the points on which the case really turns, and by these means has greatly assisted us in the discovery of truth. In the present unsettled state of our jurisprudence, too great pains cannot be taken, in settling principles which have an extensive bearing on the transactions of men: and discussions which contribute to a correct understanding of these principles, when conducted with the learning, ability, and temper, which distinguished the argument at the bar, are extremely grateful to us, and highly beneficial to the public.

The system established by the Legislature in regard to the succession of deceased persons, has been eulogized by one of the parties, as the best that legislation has produced,—harmonious in its several parts,—admirably calculated to insure a speedy and equitable payment of the debts due,—to guard and protect the interests of absentees and minors, and

East'nDistrict.
*April*, 1824.

DE ENDE
vs.
MOORE.

secure the rights of all concerned. By the other side it has been denounced, as unsound in principle,—confused and contradictory in its details, and inadequate to the purposes for which it was created. The truth we apprehend, in this case, as in many others, lies between these extremes. We certainly think the principle of attaining an early and complete settlement of the estate, by compelling all the creditors to present their claims to one court, a sound one ; but the means necessary to give effect to the system introduced into our code on this principle, have not been furnished with the clearness that might be desired, and hence great inconvenience and delay, frequently result from its operation.

It would be sufficient perhaps, to refer to the opinion in the case already alluded to, for the reasons on which we there came to the conclusion, that the purchaser at a sale made by order of the probate court, took the property free from the liens existing on it ; and proceed at once to the further considerations, which the argument of the appellee has furnished. But it will enable us to take a more connected, and satisfactory view of the subject ; to repeat here, at least in part, the

East'n District grounds on which that decision was made, and
April, 1824.   the authorities by which it was supported.

De Ende
  vs.
Moore,

Referring however to so much of that opinion,
as went to show, that it was a necessary con-
sequence of the general system established in
relation to the settlement of successions, that
the mortgagee creditor, should be compelled
to come in, and receive payment out of the
proceeds of the sale, and not suffered to en-
force his claim by a separate suit before the
court of probates, or any other tribunal; we
proceed to state, that the decision there made,
was principally founded on three distinct,
and positive provisions of our code, which
present no ambiguity in their language, and
nothing equivocal in their meaning. The first
was that, which declares, that it shall be the
duty of the judge to sell *all* the property of
the deceased. The second, that which pro-
vides, that on the proceeds of this sale, the
court shall settle the order of privileges and
mortgages; and the third, that which directs,
*that any creditor*, who after notice given in the
manner prescribed, does not come forward,
and obtain payment out of the fund in the
hands of the curator, shall, (in the language
of the law,) be without further resource, or

remedy.  *Civil Code* 174, *art.* 128, *ibid* 178, *art.* 138 *a* 139.

From these positive declarations of the Legislative will, we made in the former case, the following deductions.  First, that the property which was subject to mortgages must be sold, as well as any other ;  for if it were not, *all* the property would not be disposed of. Second, that this property was sold without being subject in the hands of the purchaser to the mortgages previously existing on it, because the mortgagees had a right conferred on them to take the proceeds in preference to chirograph creditors ;  a right wholly inconsistent with the idea that these proceeds were only the balance of what the property sold for, over and above the amount for which it stood hypothecated.  And lastly, that as there was neither resource, nor remedy, for the creditor who did not present his claim, to be paid out of the fund in the hands of the curator, that we could not sanction his right, to recover the amount due him, by a separate action.

After having again most carefully compared these conclusions, with the law from which they were drawn, we are unable to see, in what respect we have erred, or how any other

East'n District.
*April,* 1824.

DE ENDE
*vs.*
MOORE.

interpretation could have been given to the commands of the legislature. We had not authority to say that only *part* of the property should be sold, when the law expressly directs it *all* to be disposed of: nor could we declare that the mortgagees should not be paid out of the proceeds of that sale, when we find the judge expressly directed to settle the rank and order, of their claims, on these proceeds. The counsel for the appellee, who in direct opposition to these provisions contended, that the mortgagee may come forward, and by paying any higher privilege that exists on the property affected to him, prevent it from being sold, has told us that it is begging the question to say the mortgagee creditor has a right to be paid out of the proceeds: that we should first ascertain from the other provisions of the law, whether the property was sold free from the mortgage· We have given to this objection much consideration, for on the soundness of our deduction in regard to the right of the privileged creditor to claim his lien on the proceeds of the thing sold, the decision of the cause principally turns. We profess however, to be unable to see, how the argument on which we relied, can be said to beg any thing.

East'n District.
*April*, 1824.

DE ENDE
*vs.*
MOORE.

It appears to us, on the contrary, to demand what is emphatically its own ; what is given it by the express words of the law, which de-declare, that out of the proceeds of the sale *of all the estate* the privileged and mortgage creditors shall be paid. From which provision the inference is irresistible that the property is no longer subject to the lien: for it is as conclusive to argue from the disposition to be made of the money, what is the nature of the sale, and its effects; as it would be to reason from declarations in regard to the sale, as to what should be the distribution of the fund which it produced. If on this matter, the law contained a provision, that the property should be sold to pay, the mortgagee creditor, it could not be doubted that he might demand his portion in the hands of the curator, although the statute was silent, as to the mode in which the money should be distributed. When, instead of this, it speaks not of the objects contemplated by the sale, but declares the manner in which the proceeds shall be applied, by directing the privileged and mortgaged creditors to be classed on them ; is not the argument which induces from this right to claim the money, in preference to others, the alienation of the

East'n District.
*April*, 1824.

DE ENDE
*vs.*
MOORE.

thing from which alone that right could spring, as strong, as that which in the instance just put, infers an authority to claim the proceeds, from a declaration in regard to the sale? If it be not, we are unable to perceive, in what its weakness consists.

But to the effect, which we thought, and still think, necessarily followed a public sale made by order of the court of probates, several objections have been made, and it has beeen contended:

*First.* That the mortgagee should have been cited, and that in consequence of his not being so, he was not affected by the sale.

*Second.* That the construction given by the court must be erroneous, because it impairs the obligation of the contract, and is unconstitutional.

*Third.* That it is in opposition to the express provisions of the law, in relation to the manner mortgages can be cancelled and annulled.

I The counsel has referred us to the Spanish law, by which it is provided that the creditor who is not regularly cited to a judicial sale, does not lose the lien, or mortgage, which he may have on the thing sold. The authori-

ties relied on, support the principle for which they have been cited, but they advance us little in settling a question growing out of the provisions of our code, which has established an entirely different system, in relation to the settlement of successions. By the law of Spain, unless a *concurso* of the creditors was formed, any one of them might pursue his claim indiually against the heir, or representative of the estate. It followed, as a matter of course, that no person could be affected by these proceedings, but those who were parties to them: that as to the rest of the world, they were *res inter alios actæ*, and that if it was intended to affect the interests of others, they must be cited. But according to the provisions of our code, this sale is not made at the suit of any particular creditor. It is ordered for the benefit of all, to satisfy the claim of the mortgagee, as well as any other who has demands against the estate; all the creditor or are therefore, in the contemplation of the law, parties to the proceeding, it is either binding on all, or none, and the rules made for cases where one or more are carrying on separate actions, do not apply. Whether indeed this mode of alienating property on which specific rights exist,

East'n District.
*April,* 1824.

DE ENDE
*vs.*
MOORE.

without particular notice to those interested, is a violation of the constitution, will be seen, when we examine the second point made by the plaintiff, and to the consideration of which, these observations now bring us.

II. The constitution is said to be violated, because no judicial proceedings can affect persons who are not parties to them ; because the contract is impaired—in releasing the mortgage, and in changing the term of payment.

The extent of the power of the legislature in regard to the remedies by which contracts are to be enforced, and injuries redressed, involves a question which has been as often agitated, and as keenly and anxiously debated, as any that has arisen since the formation of the governments of these states. By one class of jurists, it has been contended that this authority was unlimited : by another, this position has been strenuously denied. But amidst all the discussion to which this subject has given rise, it never has been controverted, that so far as the legislation was *bona fide*, and made with the view, and in the intention to give effect to engagements, that whatever inconveniences, or even injuries, might result to the creditor from the awkwardness or inade-

East'n District.
*April*, 1824.

DE ENDE
vs.
MOORE.

quacy of the different provisions of the law, that still they were not less constitutional on that account. Thus on the failure of a debtor to comply with his engagements, the creditor, instead of being able at once to enforce a performance, is often obliged to wait several months for the ordinary sessions of the court, before he can have judgment. After judgment is obtained, he must wait a certain period before he is allowed to carry it into effect, and even then he is frequently obstructed in his efforts to obtain satisfaction, by not being permitted to select for seizure the objects that would meet a ready sale. If he does not prosecute his claim within a certain time, he is barred by prescription. If his debtor becomes insolvent, he loses the right altogether of suing him in the ordinary way, and is obliged to join in the *concurso*. In this proceeding syndics may be appointed by a majority of the creditors, against his consent, and embezzle the funds arising from the sale of property on which he had a mortgage, and he be left without remedy. Even in an action which he has carried on separately, and on the judgment rendered in which execution has issued, his debt may be lost by the bad faith and insol-

vency of the sheriff and his sureties. His right on particular things may be lost by suits in those courts where the proceeding is *in rem*, although he never heard of its existence or progress, until it was too late to take any steps for the preservation of his interests. These examples, which might be easily multiplied, go to shew, that the rights which flow from the stipulation in a contract, may be delayed, impaired, nay in some instances destroyed, by the operation of law, in consequence of proceedings over which the creditor has no control. Yet, the regulations which produce these consequences, are clearly constitutional; at least we never heard any doubt raised with regard to them, and we apprehend that none such could be seriously raised.

There is nothing in our law in regard to the settlement of the estates of deceased persons, which appears to us to carry the legislative power further than in several of the instances just put, and which does not come fairly within the limits of the discretion, which by the constitution is necessarily vested in those who have to provide remedies. The object of the provisions introduced into our code on this subject, was evidently to insure an equita-

East'n District.
*April*, 1824.

DE ENDE
*vs.*
MOORE.

ble and speedy settlement of successions. That injury may result, in some instances, from the law taking the estate under its direction, and administering it, may perhaps be true, but the existence of the power to do so, cannot be tried by that test. The rights which the mortgagee sets up on this property are given by positive law, and the same law which conferred on him the privilege of being preferred to other creditors, could certainly point out the manner it should be enforced : and if he can successfully invoke a law in existence at the time he made his contract which secured him a preference, we do not see how he can reject that part of the same law, also in force when he contracted, which declared that on a certain event taking place, namely, the death of the mortgagor, a sale of the property should be made, and the lien shifted from the objects, to the proceeds. There is nothing in our view, unconstitutional in this, the same power that gives, may take away. The legislature, if they thought proper, could have abolished mortgages entirely, and if they permitted them, they had the right to prescribe under what modifications they should exist.

Considerable reliance has been placed on

expressions used in the case of *Lewis* vs. *Fram*, found in the 4th volume of *Martin's reports*, in which it is stated that although the practice in relation to executions was altered since the change of government, yet the principle that the creditor could not be injured by a judicial sale to which he was not cited, rested on too solid a ground to be shaken by any change of practice in judicial proceedings. This reasoning went further than was necessary for the decision of the cause, and as we remarked on a former occasion, attention should be given to what was done, rather than to what was said; for it can hardly be expected, and it rarely occurs, that the mind examines the arguments by which the decision is illustrated, with the same severity that it does the point decided. The correct mode of viewing the reasoning resorted to by a tribunal in coming to a conclusion in regard to the matter actually pronounced on, is fairly expressed in a late case, by the supreme court of the United States, when *dicta* used in a previous decision, were pressed on them as authority, " It is, (say they,) a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connexion with the case in which

those expressions are used. If they go beyond
the case, they may be respected, but ought not
to control the judgment in a subsequent suit;
where the very point is presented for decision.
The reason of this maxim is obvious—the
question actually before the court is investiga-
ted, and considered in its full extent; other
principles which may serve to illustrate it, are
considered in relation to the case decided, but
their possible bearing on all other cases, is sel-
dom investigated." 6 *Wheaton*, 400. 4 *Mar-
tin*, 397.

It has been next urged, that the effect of the
proceedings in the probate court, is to release
the mortgage without the consent of the mort-
gagee, and that this violates the constitution
by impairing the obligation of the contract.
Had the legislature positively directed that a
release of the mortgage should have preceded
a sale in the probate court, they would hae
done nothing more than they have done in re-
lation to insolvent estates, and which they
surely may do, in any case where the object
of the law is to facilitate a sale made to pay
the mortgagee. That provision however was
unnecessary for the security of the buyer, the
moment they declared that out of the proceeds

East'n District:
April, 1824.

DE ENDE
vs.
MOORE.

of the sale, the mortgage creditor should be paid : for the purchaser held under the lien, to satisfy which it was sold. The proceedings had under the decree of the probate court, did not *release* the mortgage: they *enforced* it; and if a sale thus made to satisfy the mortgage debt, can be called impairing the obligation of the contract, then the same consequence must follow every judicial sale made to attain the same object, in the ordinary way.

As to the objection that the creditor is not obliged to receive his money before the debt falls due, much weight did not appear to be attached to it by counsel. We understand it to be a clear principle of our law, that the debtor has the right, and if after his death the law prescribes it as an obligation on his representative to make the payment, the creditor at least cannot object he who pays later, *perhaps* pay less, but he who pays sooner, *certainly* does not. *Pothier, traite des Ob. no. 233. Dig. liv. 50, tit. 17, l. 17, ibid 46, tit. 3, l. 70. Civil Code 276, art. 87 a 88.*

It now remains to examine whether the conclusions to which we have come a re direct opposition, as it is alleged they are, to the positive provisions of the code. We are

East'nDistrict.
*April*, 1824.

De Ende
*vs.*
Moore.

referred to the 64th article, page 466, in which it is declared, that mortgages recorded, can only be erased by the consent of the parties, or a final judgment. Neither of which being shewn here it is contended, either that the mortgage is still in force, or the law is violated. We have already given what we think a satisfactory answer to this position, in noticing the argument drawn from the constitution ; but as this idea of the mortgage being still in force, unless expressly erased, or cancelled, seems to us the pervading error which run the whole argument of the appellees counsel, and as it was the point on which the district judge decided the cause below, it is deemed by us proper to notice it more particularly.

The article relied on, does not state, that mortgages may not b eleased, or cancelled, in any other mode except by the consent of parties, or a decree of the court ; it declares they may be cancelled in this way, but uses no negative expressions ; and even if it did, it would not prove that the mortgagee could exercise his lien in all cases where the mortgage was not expressly erased from the record. Because, as it is well known, these incumbrances may be *extinguished*, without being *can-*

*celled.* The code in a subsequent provision to that cited, enumerates three modes in which privileges or mortgages are extinguished—by the extinction of the principal obligation—by the creditors renunciation—and by prescription. There is still another mode in which the *mortgagees claim* is extinguished: by the mortgage having its effect through a judicial sale. Take the familiar case of an order of seizure, and alienation under it, and this will be apparent. The property is sold at the suit of the mortgagee, and the buyer acquires not only the title of the debtor, but the benefit of the lien which the creditor had on it; for if a mortgagee, younger than him at whose suit the sale had been made, would attempt to enforce his claim on the object in the hands of the purchaser, he could oppose to it that he held under an elder lien. If the plaintiff at whose suit the property had been sold, were again to set up a claim on it, on the ground that there was still a balance due him: it is surely unnecessary to state that such a pretension could not be sustained. Here then we find a case where the right of the mortgagee is extinguished, without the mortgage being either cancelled, or erased. In such circumstances, a

release is unnecessary, nay inconsistent with the right acquired ; for the purchaser holds under the mortgage, by virtue of the assignment which the law makes in consequence of the property being sold to satisfy the lien. *Civil Code* 290, 15 .

If this then be the effect of the sale made in the ordinary course of justice, and we think it most clear that it is, in what does that now before us differ? The sale made here was under a decree of the court—for the benefit of the mortgagee creditor—to enforce his lien: and in order to insure him a prompt and ready payment of his debt.

On the whole, we conclude that there is neither a violation of the constitution, nor a disregard of any positive provision of the law, in holding that the claim of a mortgagee creditor is extinguished by a sale such as was made in this case.

It now only remains for us to consider the circumstances which are particular to this cause, and which it has been contended takes it out of the general rule.

The first is, that the act of mortgage contains the pact of *non alienando ;* on which we think it sufficient to remark, that the provisions

East'n District
*April*, 1824.

DE ENDE
*vs.*
MOORE.

of the code so often referred to, which directs all the property to be sold, has introduced an exception to this general rule, in case of the mortgagors death. The latter provision is inconsistent with the former, and it must prevail.

The allegation that the sale was made without the proper advertisements, does not appear to be supported by the evidence. It was ordered on the 26th of September, and took place on the 25th of November; making a period of 60 days, and not 29, as was urged by the appellee.

The lowness of ths price, and the circumstances attendant on the sale, have been pressed on us as evidence that the purchaser bought subject to the mortgages. The lowness of the price is good evidence to shew, that other persons who might have been inclined to buy, understood the law to be, as the appellees have supposed it; but it is not evidence that the purchaser so understood it. On the contrary, the parish judge who acted as auctioneer, states expressly that on crying the property, he declared it to be his opinion that the purchaser would take it free from all liens. The whole of the transaction, as it appears on

East'n District.
*April,* 1824.

De Ende
*vs.*
Moore.

record, renders it probable that the sacrifice of the property arose from a difference of opinion between the legal agents of the mortgagee, and the executrix. That error, and the consequences of it, are deeply lamented by us, but we cannot prostrate law, in order to reach equity. Had the purchaser given the full value for the object sold, and it were afterwards found that he had mistaken the law, and that in his hands it was subject to the liens previously existing on it, we should most certainly have enforced them. As the property is free from these liens, he has a right to demand, that the same measure of justice should be extended to him ; that he have the benefit resulting from his better foresight as to consequences in this contract, which he would had in any other, where he acted honestly.

We ▬▬▬ *have gone* into this subject more at length than is usual, not because we felt any doubt on the law, but because it is important in the administration of justice, not only that we should arrrive at correct conclusions, but that we should also, as far as it is practicable, render the grounds on which we have come to those conclusions, satisfactory to others.

~~~~~~

DE ENDE
*vs.*
MOORE.

It is therefore ordered, adjudged and decreed, that the judgment of the court be annulled, avoided and reversed, and that there be judgment for defendant, with costs in both courts.

*Eustis* for the plaintiff, *Preston* for the defendant.